## IN THE COURT OF COMMON PLEAS
## OF FRANKLIN COUNTY, OHIO

DESTINATIONS BY DESIGN, LLC :
6000 Venture Drive, Suite D :
Dublin, Ohio 43017, :
                         :   Case No.:
          Plaintiff, :   0 9 C V E 1 0 - 1 6 1 5 8
                          :
     vs. :   Judge:
                          :
T-MOBILE USA, INC. :
12920 SE 39th Street :
Bellevue, Washington 98006, :   (JURY DEMAND ENDORSED
                          :   HEREON)
     Also serve: :
                          :
     CSC-Lawyers Incorporating Service :
     Statutory Agent :
     50 W. Broad Street :
     Suite 1800 :
     Columbus, Ohio 43215, :
                          :
          Defendant. :



### COMPLAINT

    Now comes Destinations by Design, LLC ("Plaintiff" or "DBD") and for its Complaint against Defendant T-Mobile USA, Inc. ("Defendant" or "T-Mobile") hereby states as follows:

### I.   Nature of Case

    1.    This action arises as a direct and proximate result of Defendant T-Mobile's extensive ongoing course of wrongful conduct whereby T-Mobile has systematically, deliberately and unlawfully breached its various contracts with Plaintiff DBD. DBD is an event planner and has worked with Defendant T-Mobile since 2001. After the parties' written contract expired by its own terms, DBD and T-Mobile entered into various oral agreements whereby DBD agreed to continue to perform multimillion dollar event planning for T-Mobile in exchange for a commission equal to fifteen percent (15%) of the budgeted line items for the event. After

Col - 170221.2

authorizing DBD to commence planning its mega-conference in Las Vegas, Nevada and after DBD secured numerous employees, venues, contracts and spent significant man hours, T-Mobile unilaterally cancelled the event and now refuses to pay DBD its agreed upon commission. Accordingly, DBD seeks its damages arising from Defendant T-Mobile's breach of contract, unjust enrichment, promissory estoppel and fraud.

**II.**    **Jurisdiction, Venue and Parties**

2.    Plaintiff DBD is a limited liability company organized under the laws of the State of Ohio with its principal place of business at 6000 Venture Drive, Suite D, Dublin, Ohio 43017.

3.    Defendant T-Mobile is a corporation organized under the laws of the State of Delaware with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. Defendant is registered to conduct business in the State of Ohio and performs business in Franklin County, Ohio.

4.    Venue is proper in this Court as Defendant's activity for which all or part of Plaintiff's claims for relief arose has occurred in Franklin County, Ohio.

**III.**    **Claims for Relief**

5.    Plaintiff DBD is an event management company that engages in the planning, operation and execution of business meetings and events for corporate entities.

6.    Defendant T-Mobile is a telecommunications company that provides telecommunications sales, support and services on a nationwide basis.

7.    In the fall of 2001, DBD and Defendant T-Mobile (the "Parties") established a business relationship in which DBD began planning, operating and securing vendor contracts for T-Mobile's business meetings and events.

8.      After four (4) years of growing the relationship, in 2005 DBD and T-Mobile formalized their business relationship by executing a Services Agreement with an effective date of December 1, 2005 (the "Agreement"). The Agreement expired by its own terms on December 1, 2008. Thereafter, the parties maintained their relationship and agreed to continue to work together. In exchange for DBD's services, T-Mobile promised to pay DBD fifteen percent (15%) of the gross budgeted line items for the event planned whether the event was cancelled or completed.

9.      Among the many events that Plaintiff organized for Defendant, the largest event was the annual Q-4 event.

10.     After planning and executing a successful 2008 Q-4 event, T-Mobile expressly requested DBD to immediately begin to plan and coordinate the 2009 Q-4 event to be held in Las Vegas, Nevada in September, 2009.

11.     Relying upon Defendant's representations, DBD undertook the process of planning and coordinating the 2009 Q-4, including, but not limited to, negotiating a multimillion dollar contract with The Venetian Hotel in Las Vegas, Nevada ("The Venetian"), coordinating various logistics and vendors, financial planning and a wide array of tasks necessary for the execution of a successful event.

12.     Due to the comprehensive scope of the planning associated with the 2009 Q-4, Plaintiff was unable to pursue other profitable opportunities, refused other potential business and continued to employ people whose sole function was to work on and plan the 2009 Q-4 event.

13.     In or around October 30, 2008, after months of planning for the 2009 Q-4 and securing several contracts, T-Mobile, for the first time, inquired about the cost of cancelling the 2009 Q-4 event.

14.    On October 31, 2008, DBD provided T-Mobile with the complete cancellation cost, including, but not limited to, DBD's and the various other vendor's cancellation fees.

15.    Specifically, T-Mobile was advised that it was responsible for the Venetian's cancellation fee in excess of $3,200,000.00 and DBD's commission in the amount of fifteen percent (15%) of the 2009 Q-4 budgeted line items.

16.    In the spirit of cooperation, and in an effort to show its good faith, DBD ultimately agreed to reduce its commission by fifty percent (50%) to $750,000.00.

17.    In early November, 2008, T-Mobile advised DBD that it had met internally and that it decided not to cancel the 2009 Q-4 event. T-Mobile expressly advised DBD to continue planning said event.

18.    In or around November 24, 2008, T-Mobile reversed course and advised DBD that because of financial concerns, it wanted to reduce the scope of the 2009 Q-4 by limiting the event to T-Mobile Management as opposed to its sales staff, thus significantly reducing the size of the event to approximately five hundred (500) people.

19.    On or about January 6, 2009, the T-Mobile Event Team and DBD were together in Las Vegas for the Consumer Electronics Show, which was planned and operated by DBD. During this meeting, T-Mobile falsely continued to advise that it was going forward with the 2009 Q-4 event. During this event, T-Mobile and DBD met and discussed the continued planning of the 2009 Q-4 event.

.20.    Justifiably relying upon Defendant's representations that the 2009 Q-4 would go forward, DBD continued to conduct the necessary work to move forward with the event but in a scaled back manner reducing the amount of attendees.

21.    On or about January 13, 2009, DBD apprised T-Mobile again that the Venetian's cancellation fee escalates significantly if T-Mobile cancelled the 2009 Q-4. Despite knowing that it was not going to go forward with the event in any capacity, T-Mobile expressly requested DBD to continue planning for the 2009 Q-4, which it did.

22.    Despite Defendant T-Mobile's repeated representations, and with the understanding the cancellation fees and commissions it would be required to pay in the event of cancelling of the 2009 Q-4 event including, but not limited to, the Venetian's cancellation fees and DBD's commission, T-Mobile unilaterally terminated the 2009 Q-4 event on May 11, 2009 and demanded Plaintiff to cease all work on Defendant's projects.

23.    To date, T-Mobile has not paid DBD its commission or its expenses, including, but not limited to the cancellation fee for the Venetian and for the work completed on the 2009 Q-4 event.

## COUNT ONE – BREACH OF CONTRACT

24.    Plaintiff realleges and incorporates each of the foregoing paragraphs as if fully rewritten herein.

25.    On or about December 1, 2008, DBD and T-Mobile entered into an agreement whereby DBD agreed to continue its efforts of planning the 2009 Q-4 event for T-Mobile in exchange for the payment of a commission equal to fifteen percent (15%) of all applicable budgeted line items for the event that DBD manages for T-Mobile. DBD further agreed to return all commissions and discounts negotiated on behalf of T-Mobile for said event.

26.    Because of the tremendous amount of work and planning required by DBD, it was further agreed and understood that the payment of the commission would be paid to compensate

DBD for planning the event. T-Mobile was responsible for said commission whether the event was cancelled or completed.

27.     T-Mobile, and specifically its Senior Manager Joe Cloud, whom DBD was required to report, explicitly advised DBD to continue planning the 2009 Q-4 event for the reduced event when T-Mobile knew, or should have known, that it was not going to move forward with the event.

28.     Reasonably relying upon the authorization and representations of T-Mobile, DBD continued to work on the scheduling of the event. Specifically, DBD negotiated and secured the Venetian Hotel as the venue for the event.

29.     DBD secured or was in the process of securing the necessary audio visual companies, entertainment venues, transportation necessary for the event, golf course access, off-site catering, ticket brokers, signage, décor and team building professionals.

30.     DBD performed all of its obligations under its contract with T-Mobile.

31.     T-Mobile breached its contract with DBD by failing to pay DBD its commission for the work completed by DBD on the 2009 Q-4 event and its related expenses, including, but not limited to the cancellation fee for The Venetian and other T-Mobile events that DBD was requested and did perform its planning and event services.

32.     DBD has incurred significant monetary and non-monetary damages as a direct and proximate result of Defendant's breaches identified herein.

### COUNT TWO – PROMISSORY ESTOPPEL

33.     Plaintiff realleges and incorporates each of the foregoing paragraphs as if fully rewritten herein.

34.     Defendant's promise to pay DBD its commission was purposely made to induce DBD to enter into the agreement to plan the 2009 Q-4 event.

35.     Plaintiff reasonably and justifiably relied upon Defendant's promise to pay for the services DBD would provide, all to its detriment and damage.

36.     DBD's reliance on T-Mobile's promises was reasonable and foreseeable as Plaintiff had no reason to know of Defendant's misrepresentations at the time they were made.

37.     As a direct and proximate result of Defendant's foregoing actions, Plaintiff has been damaged in an amount in excess of $750,000.00 in compensatory damages.

### COUNT THREE – UNJUST ENRICHMENT

38.     Plaintiff realleges and incorporates each of the foregoing paragraphs as if fully rewritten herein.

39.     Plaintiff brings this claim for equitable relief under the common law of Ohio.

40.     T-Mobile has knowingly accepted and retained the benefits of Plaintiff's work, experience and assistance in scheduling and cancelling the 2009 Q-4 event and other events that were completed.

41.     T-Mobile has retained all of the benefits conferred on it by DBD without remitting payment for said benefits.

42.     Defendant T-Mobile's retention of the benefits conferred on it by DBD without compensating DBD is unjust.

43.     As a result of Defendant's failure to pay for the benefits and services provided by DBD, T-Mobile has been unjustly enriched.

## COUNT FOUR – FRAUD

44. Plaintiff realleges and incorporates each of the foregoing paragraphs as if fully rewritten herein.

45. Since the fall of 2001, DBD has been assisting T-Mobile in the planning, operations and execution of its business meetings and events.

46. DBD's dedication and support has allowed T-Mobile to enjoy its growth and recognize its success through its personnel and achievements.

47. As in previous years, T-Mobile requested DBD to plan a meeting for T-Mobile in Las Vegas, Nevada that would include the attendance of well over a thousand people.

48. On or about April 24, 2008, DBD, with the authority and knowledge of T-Mobile, secured The Venetian in Las Vegas, Nevada as the site of the 2009 Q-4 event. With the authorization of T-Mobile, DBD entered into a contract with The Venetian to serve as the host hotel and casino for the event.

49. The Venetian agreement with DBD had significant cancellation fees in excess of approximately $3,200,000.00.

50. On or about October 30, 2008, T-Mobile, for the first time, inquired about the costs for which it would be responsible if the 2009 Q-4 event in Las Vegas was cancelled.

51. DBD responded to the request on October 31, 2008 and advised T-Mobile that there is a cancellation fee for the Venetian and the various other vendors including, but not limited to DBD.

52. After T-Mobile received this information, in early November, 2008, T-Mobile instructed DBD that the 2009 Q-4 event scheduled for September 2009 would go on as planned. When this statement was made, T-Mobile knew or should have known that the event was being

cancelled, yet it falsely advised DBD to continue to perform its planning and to further incur significant costs to the detriment of DBD.

53.     Nevertheless, on or about November 24, 2008, T-Mobile advised DBD that it was reducing the size of the event. DBD was again instructed to continue its efforts in planning the 2009 Q-4 event at a reduced scale. The event was going to be limited to approximately five hundred (500) attendees.

54.     In January 2009 and thereafter, knowing that the 2009 Q-4 event would be cancelled, T-Mobile still continued to advise DBD that it would go forward as planned on a reduced scale.

55.     Defendant T-Mobile's failure to timely disclose its plan not to go forward with the 2009 Q-4 event and that DBD should continue to work on the project was false and misleading at the time that the statements were made.

56.     Defendant T-Mobile acted by and through its agents and specifically Joe Cloud, one of its senior managers, knowingly and/or recklessly in failing to disclose these material facts to DBD and in making the false statements, and/or its omission to disclose certain known facts. T-Mobile knew or should have known that said representations were false at the time they were made.

57.     As a direct and proximate result of T-Mobile's fraudulent conduct, DBD seeks compensatory and punitive damages and legal fees in an amount to be proven at trial.

**WHEREFORE,** Plaintiff Destinations by Design demands judgment as follows:

A)     On Counts One, Two and Three, compensatory damages in an amount to be determined at trial but, in no event, less than $25,000.00;

B)     On Count Four, compensatory and punitive damages in an amount to be determined at trial;

C)     On all counts, judgment shall include prejudgment interest, post-judgment interest, attorney's fees and reasonable costs as allowed by law; and

D)     Such other and further relief in favor of Plaintiff as this Court deems just and equitable.

Marc J. Kessler (0059236)
F. Allen Boseman, Jr. (0084103)
Hahn Loeser & Parks LLP
65 East State Street, Suite 1400
Columbus, Ohio 43215
Telephone: (614) 233-5168
Facsimile: (614) 221-5909
Email: mkessler@hahnlaw.com
        aboseman@hahnlaw.com

and

Glenn F. Alban (0059482)
Alban & Carlson LLP
7100 North High Street, Suite 102
Worthington, Ohio 43085
Telephone: (614) 340-4044
Facsimile: (614) 340-4042
Email: galban@albanandcarlson.com

*Attorneys for Plaintiff Destinations by Design, LLC*

### JURY DEMAND

Now comes the Plaintiff, by and through counsel, and hereby demands a trial by a jury of eight (8) persons to hear the within case.

Marc J. Kessler